**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| **Mayra Rodriguez-Rivera**<br>Plaintiff<br><br>v.<br><br>**Wal-Mart Puerto Rico, Inc., et al.**<br>Defendants | **Civil No. 14-1504 (DRD)** |

## OPINION & ORDER

Federal tribunals are courts of limited jurisdiction. Moreover, pursuant to constitutional authority, congress enacted a statute that restricts the diversity jurisdiction of district courts. See U.S. Const. art. III, §§ 1-2; 28 U.S.C. § 1332. Over time, diversity jurisdiction has come to be one of the major avenues traversed in order to reach the federal judiciary. The instant case tests the limits of diversity jurisdiction, specifically with regard to its amount-in-controversy requirement.

Pending before the Court is a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. See Docket No. 9. For the ensuing grounds, the motion to dismiss must be **DENIED**.

## I.    FOREWORD

At the outset, it should be noted that when evaluating a "Rule 12(b)(1) motion, we must 'credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor.'" Sanchez ex rel. D.R.-S. v. United States, 671 F.3d 86 (1st Cir. 2012) (citing Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010)).

Hence, the Court shall briefly recite the germane factual allegations of the complaint in the light most favorable to Plaintiff.

Mayra Rodríguez-Rivera ("Plaintiff")—who is domiciled in the state of Florida— and her aunt were at the Sam's Club store of Humacao, Puerto Rico. Specifically, they found themselves in the parking lot of the store after purchasing some items. While Plaintiff attempted to place the merchandise in the car, she stepped in a "crack" in the cement and suffered a violent fall that resulted in trauma to her head, shoulders, arms, waist, knees, legs, and foot. As a result of the fall, she suffered a "transverse non-displaced fracture at the base of the fifth metatarsal bone of her right foot." This fracture forced Plaintiff to use crutches, a wheelchair, and a walker. However, the use of these items of assistance caused problems of their own: Plaintiff developed "pain, swelling, and tenderness" of her shoulders, arms, and hands. This lawsuit is a product of the foregoing events.

Plaintiff filed the instant lawsuit in federal court on the basis of diversity jurisdiction. The causes of action arise exclusively from the Puerto Rico tort statutes. See 31 P.R. Laws § 5141, *et seq*. The entity responsible for the damages, according to Plaintiff, is Wal-Mart Puerto Rico, Inc. ("Defendant"), which is alleged to be the entity that "owned, controlled, operated and provided maintenance" to the store and parking lot in question.[1] Plaintiff seeks a judgment in excess of $4,000,000 in compensation for

---

[1] The Court notes that the complaint also includes as defendants fifty (50) unknown employees that "owned, controlled, operated and provided maintenance" to the store and parking lot subject to the controversy. Further, the complaint also includes as defendants fifty (50) unknown insurance companies that may have had insurance policies on behalf of any other defendant to cover occurrences such as Plaintiff's fall. Also of note is that Plaintiff asserts that these one hundred (100) Defendants are domiciled outside of Florida, which would avoid any potential jurisdictional problems for lack of complete diversity. See 28 U.S.C. § 1332.

the physical, emotional, and economic damages that have occurred, will occur, or are occurring.

However, Defendant contends that there is no hook upon which federal jurisdiction may hang.  Defendant challenges this Court's jurisdiction by declaring that the $75,000 jurisdictional threshold cannot be met.  Prior to delving into the particulars of this contention, it is best to present the general principles surrounding the age-old amount-in-controversy bar.

## II.  PRICE OF ADMISSION

There are two obstacles that a proponent of diversity jurisdiction must overcome before being allowed to enter the realm of the federal judiciary: (i) demonstrating the existence of complete diversity of citizenship between the parties; and (ii) establishing that the amount in controversy exceeds $75,000, exclusive interests and costs.  See 28 U.S.C. § 1332.[2]  Defendant's attack is directed exclusively against the latter requirement; hence, Defendant concedes that, at least for the sake of this motion,

---

[2] 28 U.S.C. § 1332

(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between--

    (1) citizens of different States;

    (2) citizens of a State and citizens or subjects of a foreign state, except that the district courts shall not have original jurisdiction under this subsection of an action between citizens of a State and citizens or subjects of a foreign state who are lawfully admitted for permanent residence in the United States and are domiciled in the same State;

    (3) citizens of different States and in which citizens or subjects of a foreign state are additional parties; and

    (4) a foreign state, defined in section 1603(a) of this title, as plaintiff and citizens of a State or of different States.

. . .

complete diversity of citizenship exists between the parties.  Therefore, for ease of exposition, the Court shall limit its discussion to the amount-in-controversy prong.

At the outset, the Court recognizes that the "determination of the value of the matter in controversy for purposes of federal jurisdiction is a federal question to be decided under federal standards." Horton v. Liberty Mut. Ins. Co., 367 U.S. 348, 352 (1961) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 104 (1941)); see also Stewart v. Tupperware Corp., 356 F.3d 335, 339 (1st Cir. 2004) ("Using Puerto Rico Supreme Court cases to analyze the amount-in-controversy for diversity purposes is the equivalent of comparing apples and oranges.").

The second observation is that the Court must determine which party carries the burden of persuasion as to the existence of federal jurisdiction.  A determination of this nature depends on whether the case was originally filed in federal court or reached the federal judiciary via removal.  In cases that originate in federal court, it is the plaintiff who carries the burden; in contrast, in removal cases the burden is carried by the defendant.  See e.g. Esquilin-Mendoza v. Don King Productions, Inc., 638 F.3d 1 (1st Cir. 2011); and Amoche v. Guarantee Trust Life Ins. Co., 556 F.3d 41, 50-51 (1st Cir. 2009); and 14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702.1, at 330 (4th ed. 2011).

Similarly, it should be noted that the amount-in-controversy analysis changes depending on whether the case reached the federal judiciary via removal or was originally filed in federal court.  For instance—when the amount in controversy is challenged in diversity-jurisdiction cases that commence in federal court—the plaintiff must, in order to repel the challenge, make a showing that there is no "legal certainty

that the claim is really for less than the jurisdictional amount." St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 288–89 (1938) (cited in approval in Esquilin-Mendoza, 638 F.3d at 4).   On the contrary—in cases where the amount in controversy is challenged in the removal context—it is the defendant that must make a showing that there is a "reasonable probability" that plaintiff's claims exceed the jurisdictional amount.   Amoche, 556 F.3d at 50-51 (1st Cir. 2009); see also Romulus v. CVS Pharmacy, Inc., 770 F.3d 67, 80 n. 13 (1st Cir. 2014); c.f. 28 U.S.C. § 1446(c)(2)(B).[3]

With respect to the amount-in-controversy requisite in cases that begin in federal court, the First Circuit summarized the rules established by the Supreme Court as follows:

> First, federal courts must diligently enforce the rules establishing and limiting diversity jurisdiction. Second, unless the law provides otherwise, the plaintiff's damages claim will control the amount in controversy for jurisdictional purposes if it is made "in good faith." If the face of the complaint reveals, to a legal certainty, that the controversy cannot involve the requisite amount, jurisdiction will not attach. [St. Paul, 303 U.S. at 289]. Moreover, if later evidence shows, to a legal certainty, that the damages never could have exceeded the jurisdictional minimum such that the claim was essentially feigned (colorable) in order to confer jurisdiction, the action must be dismissed. See also id. at 290, 58 S.Ct. at 591 (noting that plaintiff's good faith in choosing a federal forum may be challenged by trial facts which establish that the "claim never could have amounted to the sum necessary to give jurisdiction"). Finally, if events subsequent to commencement of the action reduce the amount in controversy below the statutory minimum, the federal court is not divested of jurisdiction.
>
> A careful review of St. Paul evinces its primary concern for the plaintiff's "good faith" in alleging the amount in controversy. When discerning a plaintiff's good faith, a court may look to whether it "appear[s] to a legal certainty that the claim is really for less than the jurisdictional amount." St. Paul, 303 U.S. at 289,

---

[3] It should be noted that the "preponderance of the evidence" language of 28 U.S.C. § 1446(c)(2)(B) is equivalent to the First Circuit's "reasonable probability" standard.   "[T]he reasonable probability standard is, to our minds, for all practical purposes identical to the preponderance standard adopted by several circuits."   Amoche, 556 F.3d at 50 (collecting cases).   "Yet because questions of removal are typically decided at the pleadings stage where little or no evidence has yet been produced, the removing defendant's burden is better framed in terms of a 'reasonable probability,' not a preponderance of the evidence."   Id. (citing Brill v. Countrywide Home Loans, Inc., 427 F.3d 446, 449 (7th Cir. 2005)).

58 S.Ct. at 590; *see also* Horton, 367 U.S. at 353, 81 S.Ct. at 1573; Jones v. Landry, 387 F.2d 102, 104 (5th Cir.1967) ("Thus, there is but one test; good faith and legal certainty are equivalents rather than two separate tests."). *But see* Local Div. No. 714, Amalgamated Transit Union v. Greater Portland Transit Dist., 589 F.2d 1, 9 (1st Cir.1978) (apparently finding alternative tests, noting that where there is no evidence that the amount claimed was not in good faith, it must appear "to a legal certainty" that the amount in controversy does not exceed the jurisdictional minimum), *overruled on other grounds by* Local Div. 589, Amalgamated Transit Union v. Massachusetts, 666 F.2d 618 (1st Cir.), *cert. denied*, 457 U.S. 1117, 102 S.Ct. 2928, 73 L.Ed.2d 1329 (1981).

Coventry Sewage Associates v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995) (discussing *St. Paul*).

"Courts determine whether a party has met the amount-in-controversy requirement by 'looking to the circumstances at the time the complaint is filed.'" Spielman v. Genzyme Corp., 251 F.3d 1, 5 (1st Cir. 2001) (citing Coventry Sewage, 71 F.3d at 4; and Wright & Miller § 3702 at 28–29 n. 31).

Clearly, a grander burden is placed on the shoulders of a defendant in the removal context than on a plaintiff in cases originating in federal court. "This discrepancy in treatment of plaintiffs and defendants may be justified by the historical tradition that the plaintiff is the master of the forum and is empowered to choose the court system and venue in which litigation will proceed." 14C Wright, Miller & Cooper, Federal Practice and Procedure § 3725, at 95 (3d ed.1998) (cited in approval in Amoche, 556 F.3d at 50-51).

Having introduced these general concepts, the Court is now prepared to discuss the flaws in Defendant's argument. For the reasons set forth below, Defendant's position cannot survive scrutiny.

### III.    WRONG CASE, WRONG STANDARD, OR BOTH?

Upon reading Defendant's motion to dismiss, a particular Supreme Court citation caught the Court's attention: "[u]pon defendant's challenge, however, 'the burden shifts to the plaintiff to establish facts indicating, to a legal certainty, that the claim involves more that [sic] the jurisdictional minimum.'"  See Docket No. 9, p. 5 (mistakenly citing St. Paul, 303 U.S. at 288-89).  Unfortunately, this quote caught the Court's eye for all the wrong reasons.

If true, this Supreme Court quote would appear to contradict this Court's previous discussion along with decades of federal case law; the burden placed on a diversity-jurisdiction plaintiff's shoulders would be much too onerous as it would essentially force them to prove their claims twice in order to prevail.  Therefore, intuitively, the Court was convinced that there must have been some inaccuracy (in addition to the grammatical error) contained in this powerful citation.

At first, the Court believed that this quote must have been taken from the St. Paul case out of context.  Thus, this Court dusted off the Supreme Court Reporter for the year of 1938 (the year that St. Paul was decided) and turned to the pages of Defendant's citation.  Alas, Defendant's quote could not be found.  Undeterred, in an abundance of caution, the Court reread the entire case several times in an effort to find this mysterious quote.  These attempts were unsuccessful.

The Court subsequently speculated that Defendant may have mistakenly cited the wrong case.  Thus, the Court dropped the books and turned on the computer. These efforts were for naught: after thoroughly searching through the known research

engines on the internet, it was clear that the Court underestimated Defendant's mistake. It would appear that this imaginary quote does not exist in *any* published court opinion in the United States.  Of course, this is not surprising because, as previously alluded to, said quote would tear down a mountain of case law.

For the sake of clarity, the Court emphasizes the difference between fiction and reality.  "If the opposing party questions the damages allegation, then the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount."  (internal quotations omitted).  Stewart v. Tupperware Corp., 356 F.3d 335 (1st Cir. 2004) (citing Gibbs v. Buck, 307 U.S. 66, 72 (1939); St. Paul, 303 U.S. at 288–89 & n. 10; McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936).  In the instant case, "[a]s the proponent of federal court jurisdiction, it is well-established that the plaintiff bears the burden of showing that there is no legal certainty that he or she cannot recover the applicable jurisdictional amount."  14AA Wright, Miller & Cooper, Federal Practice and Procedure § 3702, at 317-19 (4th ed. 2011) (collecting cases). This modest standard is much less demanding than the one (incorrectly) provided by Defendant: "[Plaintiff must] establish facts indicating, to a legal certainty, that the claim involves more that [sic] the jurisdictional minimum."  Admittedly, the wording of the correct standard may appear confusing at first glance due to its use of a double negative; perhaps this would explain Defendant's oversight.  In the end, however, this phantom quote from the highest authority constitutes a misstatement of the proper test.[4]

---

[4] The Court expects defense counsel to explain this matter, but knowing that it is expected that this error was one of merely copying a wrong citation without there being any intent to mislead the Court.

## IV.   ANALYSIS

All that remains is for Plaintiff to demonstrate that there is *no* "legal certainty that the claim is really for" $75,000 or less.  See St. Paul, 303 U.S. at 288-89 (cited in approval in Esquilin-Mendoza, 638 F.3d at 4).   Plaintiff adequately shoulders this modest burden.

Defendant's motion argues for a dismissal based on three similar district-court cases in which a jury rendered a verdict for less than $75,000.  Plaintiff counters with another similar case against another Wal-Mart entity in which the jury awarded the victims $665,000.   Clearly, the jury award turns on the weight and credibility of the evidence presented at trial.

In the instant case, the Court is convinced that the allegations, if proven at trial, do not support a finding that there is a legal certainty that the damages are of $75,000 or less.  Plaintiff alleges that she suffered a "transverse non-displaced fracture at the base of the fifth metatarsal bone of her right foot."[5]  This fracture required that Plaintiff use crutches, a wheelchair, and a walker.   However, the use of these items of assistance caused Plaintiff to develop "pain, swelling, and tenderness" of her shoulders, arms, and hands.   Plaintiff was unable to work, which resulted in loss of earnings. Moreover, as a result of these injuries, Plaintiff was forced to incur in medical expenses. Plaintiff, additionally, was forced to hire someone to care for her and to carry out house chores.   Finally, the disability caused by these injuries is alleged to be continuous, progressive, and permanent.

---

[5] The Court notes that Defendant also mistakenly asserts that the instant case does not involve any bone fracture.

For these reasons, the Court cannot find to a legal certainty that the claim is for less than the jurisdictional amount.  Thus, Defendant's challenge must fail as Plaintiff has met her burden.  Notwithstanding, it should be noted that if a jury returns a verdict for less than $75,000, the Court may deny costs to Plaintiff and/or impose costs in Defendant's favor.  <u>See</u> 28 U.S.C. § 1332(b).

## V.    AFTERWORD

For all of the abovementioned reasons, the Court hereby **DENIES** Defendant's motion to dismiss.  The Court rules that Plaintiff has demonstrated that there is *no* "legal certainty that the claim is really for less than the jurisdictional amount."  <u>St. Paul</u>, 303 U.S. at 288-89 (cited in approval in <u>Esquilin-Mendoza</u>, 638 F.3d at 4).   Therefore, Plaintiff has successfully invoked diversity jurisdiction in the instant case.  As such, Defendant is hereby ordered to answer the complaint within the next fourteen (14) days.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 3rd day of June, 2015.

/s/ DANIEL R. DOMINGUEZ
DANIEL R. DOMINGUEZ
U.S. District Judge